IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| **ALFRED G. LAGES,** | : | Bankruptcy No. 05-39122 BM |
| a/k/a **ALLEN LAGES** and | : | |
| **DEBORAH S. MAZZIE-LAGES,** | : | |
| a/k/a **DEBORAH M. LAGES,** | : | |
| a/k/a **DEBORAH S. MAZZIE,** | : | |
| | : | |
| **Debtors** | : | **Chapter 7** |
| | | |
| **HELENE MASSOF,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | Adversary No. 06-2280 BM |
| | : | |
| **ALFRED G. LAGES,** | : | Trial On Complaint Objecting |
| a/k/a **ALLEN LAGES** and | : | To Dischargeability Of Certain |
| **DEBORAH S. MAZZIE-LAGES,** | : | Debts |
| a/k/a **DEBORAH M. LAGES,** | : | |
| a/k/a **DEBORAH S. MAZZIE,** | : | |
| | : | |
| **Defendants** | : | |
| | : | |
| | : | |
| and | : | |
| | : | |
| **FREDERICK LA SOTA** and | : | |
| **RYAN HOMES, INC.,** | : | |
| | : | |
| **Intervenors/Third** | : | |
| **Party Defendants** | : | |

## MEMORANDUM OPINION

Plaintiff Helene Massof seeks a determination that a debt in the form of a real estate commission debtors Alfred Lages and Deborah Lages owe her is excepted from

discharge by § 523(a)(2)(A) of the Bankruptcy Code. She maintains that debtors obtained her services by fraudulent means. In addition, plaintiff avers that debtors and Ryan Homes, acting in concert, created a fraudulent scheme to avoid payment of this debt or a portion thereof. Debtors and Ryan Homes deny the averments *in toto*.

Frederick LaSota and Ryan Homes, Inc. have intervened in this adversary action. They have asked this court to hear and decide certain counts of a complaint in a pending state court action plaintiff brought against them and debtors.

We conclude for reasons set forth below that the debt owed to plaintiff by debtors is dischargeable as it relates to § 523(a)(2)(A). We will not decide the counts of the complaint in the pending state court action in which interveners are defendants because the counts are not "related to" debtors' bankruptcy case and have no affect on the adversary herein..

### FACTS

Plaintiff has been a licensed real estate agent since 1985 for RE/MAX CSI and since 1995 has been a listing agent for Toscana Development Group, Inc., a real estate development company. Toscana markets and sells undeveloped lots in a planned residential community known as Sienna Woods.

Plaintiff was entitled under the listing agreement with Toscana, to a 5% commission from anyone who purchased a lot and built a home thereon in Sienna Woods through her efforts. If the buyer had an agent, the commission was split equally between plaintiff and the buyer's agent. Plaintiff was entitled to the entire commission if the buyer

- 2 -

did not have an agent. The amount of the commission was based on the total price of the lot and the house built on the lot.

NVR, Inc. does business as Ryan Homes, Inc., which, *inter alia,* is a licensed real estate broker. Ryan Homes sells materials and services to purchasers of undeveloped lots who elect to be their own general contractor and build a home on the lots they purchase. Frederick LaSota is a sales consultant for Ryan Homes; he assists purchasers of undeveloped lots who elect to build such homes on their own.

Debtors, who are husband and wife, were in the market for a residence in the latter half of the year 2001.

Debtor Deborah Lages met with plaintiff at Sienna Woods to view available lots on November 3, 2001. She was accompanied by Helen Holland, a licensed real estate agent for Howard Hanna Realty and a friend of debtor Deborah Lages. Debtor Alfred Lages did not accompany them on that visit to Sienna Woods.

Both debtors met with plaintiff at Sienna Woods to view available lots on November 7, 2001. They were accompanied by Helen Holland. Plaintiff informed debtors at that time about the commission to which she was entitled under her listing agreement with Toscana Development. Debtors did not voice any objection to the commission arrangement.

Debtors executed an agreement on November 16, 2001, for the purchase of two undeveloped lots in Sienna Woods. RE/MAX CSI was identified at the top of the first page as the listing agent. Helen Holland and Howard Hanna Realty were identified as debtors'

agent. Helen Holland was present when debtors executed the agreement and witnessed their signatures.

After consulting with Frederick LaSota, debtors executed an owner-builder agreement with Ryan Homes on November 20, 2001, for the construction of a home on the purchased lots. Frederick LaSota executed the agreement on behalf of Ryan Homes. NVR Mortgage Company, a subdivision of NVR, financed the purchase of the lots and the construction of the home.

On December 30, 2001, approximately two weeks before the closing, Plaintiff prepared and faxed to debtors a document captioned "Sienna Woods Commission Addendum." She asked debtors to sign the addendum and fax it back to her.

The addendum memorialized in writing what plaintiff had told debtors about her commission on November 7, 2001. It read in its entirety as follows:

> The buyers Alfred and Deborah Lages agree to pay a commission on the total consideration of lots 517 and 518 and the construction loan of 5%. The commission will be divided equally. A commission of 2.5% to the Broker Howard Hanna and the Buyers Agent Helen Holland and 2.5% to the Listing Agent Helene Massof and RE/MAX CSI. The payment is to be made when Peters Township issues an occupancy permit.

Debtor Alfred Lages contacted plaintiff upon receiving the addendum and inquired why they had to sign it. Plaintiff told him that she had been "burned" in previous transactions and wanted to protect herself. Shortly thereafter, debtor Alfred Lages contacted plaintiff again and told her that debtors would sign the addendum and fax it back to her.

On January 1, 2002, debtors signed and faxed to plaintiff a *modified* version of the above commission addendum. The first paragraph recited why plaintiff had asked debtors to sign the addendum. The second paragraph stated as follows:

> Therefore, we, Alfred and Deborah Lages, are supplying this document to you as per your request, that we agree to pay a commission on the total consideration of lots 517 and 518 and the construction loan of 5%. The commission will be divided equally. A commission of 2.5% to the Buyers Agent and 2.5% to the Listing Agent Helene Massof and RE/MAX CSI. The payment is to be made when Peters Township issues an occupancy permit.

Plaintiff promptly signed the modified version of the commission addendum and faxed a copy of the fully executed document back to debtors.

The significant difference in the modified version authored by debtors was the substitution of the less specific term "Buyers Agent" for the phrase "Broker Howard Hanna and the Buyers Agent Helen Holland" found in the commission addendum prepared by plaintiff. The modification left open the possibility that someone other than Helen Holland might be debtors' agent.

Ryan Homes signed and faxed two letters to debtors on January 10, 2002, the day before the closing.

The first letter was drafted and signed by an employee of Ryan Homes at the direction of Frederick LaSota. It stated that Ryan Homes was acting as buyers' agent for debtors with respect to the undeveloped lots debtors were purchasing.

- 5 -

The second letter also was drafted at the direction of LaSota by the same employee of Ryan Homes but was signed by LaSota himself. It stated that Ryan Homes waived the commission owed to it in connection with debtors' purchase of the lots.

Plaintiff did not receive copies of the letters prior to the closing on the purchase of the two lots and was unaware until the closing that debtors claimed that Ryan Homes was their agent in the transaction.

The closing occurred on January 11, 2002. In attendance were: debtors; an employee of Toscana; Toscana's attorney; Helen Holland; the closing agent; and plaintiff, who arrived approximately five minutes after the closing began.

Debtors and Toscana executed another copy of the agreement of sale and purchase they had executed on November 16, 2001. For some unknown reason, a copy of the agreement with debtors' original signatures on it was not on file.

Prior to signing another copy of the agreement and before plaintiff arrived for the closing, debtors struck out the portion of the agreement at the top of the first page which stated that Helen Holland was the agent for debtors as buyers. They wrote in the margin of the first page next to Helen Holland's name that she was "not buyers' agent" and initialed it.

Debtors announced for the first time at the closing that *Ryan Homes*, not Helen Holland, was acting as their agent. They also announced that Ryan had waived its right to a 2.5% commission. Debtors' announcement took plaintiff by surprise but she did not protest at that time. She also did not ask the closing agent to escrow 5% of the total purchase price of the lots and construction of the home because the commission was in

addition to rather than included in the total price and was not payable until an occupancy permit for the house was issued.

Debtor Alfred Lages told plaintiff at the closing that he would meet with her at another location after the closing to explain why debtors had crossed out the above portion of the agreement and why they claimed that Ryan Homes was their agent as buyers and had waived its right to a commission. Contrary to his word, he did not show up.

At some undisclosed time after the closing, debtors offered to pay plaintiff a 2.5% commission for her services after the occupancy permit was issued. Plaintiff rejected the offer, insisting that she was entitled to the entire 5% commission if Helen Holland was not their agent. After plaintiff rejected their offer, debtors paid her nothing in the way of a commission.

Approximately one year after the closing occurred plaintiff commenced a civil action against debtors in state court to collect the 5% commission to which plaintiff claimed she was entitled. Count I of the complaint stated a claim against debtors for breach of contract. Count II stated a claim for fraud in the inducement.

Subsequently plaintiff added two counts to the complaint filed in the civil action in state court which named Frederick LaSota and Ryan Homes as additional defendants. Count I and Count II are identical to the same counts in the original complaint and are against debtors only. Count III was against all four defendants and asserted that they had conspired to deprive her of a 5% commission. Count IV is against only LaSota and Ryan Homes and stated a claim for tortious interference with her contract with debtors.

The state court action insofar as it pertained to debtors was automatically stayed when debtors filed a voluntary joint chapter 7 petition on October 6, 2006. At the request of LaSota and Ryan Homes, the state court subsequently stayed all proceedings against them because of debtors' bankruptcy filing.

The schedules accompanying debtors' petition listed assets with a total declared value of $462,384.50 and liabilities totaling $960,168.00.[1]

Included among the assets listed on the schedules was debtors' residence at Sienna Woods. It was identified as being subject to an undisputed mortgage lien in the amount of $633,136.00. The chapter 7 trustee eventually filed a notice of intention to abandon the property and reported that no assets of debtors' bankruptcy estate would be available for distribution to debtors' creditors. Plaintiffs no longer reside in the house they built in Sienna Woods.

Plaintiff was listed on the schedules as having an unliquidated, disputed general unsecured claim in an unknown amount for a purported real estate commission. To protect herself, plaintiff filed a proof of claim for an unpaid real estate commission in the amount of $40,200, or 5% of the total price of the undeveloped lots and the home debtors built on them.

Plaintiff then commenced this adversary action against debtors seeking a determination that the debt owed to her by debtors is excepted from discharge by § 523

---

[1] The schedules curiously list only debtor Alfred Lages' one-half interest in all assets he owned with co-debtor Deborah Lages as tenants by the entirety. This suggests that the original plan was for only Alfred Lages to file a bankruptcy petition but it eventually was decided that debtors would file a joint petition. This "curiosity" is not at issue here and will play no part in determining the outcome of the present adversary action.

- 8 -

(a)(2)(A) of the Bankruptcy Code. Plaintiff maintains that to obtain her services, debtors fraudulently represented that they would pay her a 5% commission if they purchased an undeveloped lot at Sienna Woods and were not represented by an agent.

Frederick LaSota and Ryan Homes thereafter brought a motion to intervene as defendants in the adversary action. They sought to intervene so they could present their defenses to Count III and Count IV of the amended complaint filed in the state court action and have this court decide them. The motion subsequently was granted though it was far from clear to the court at that time that this portion of the adversary action was in fact "related." Knowing that the court has an independent duty to determine jurisdiction even after trial, we went forward. Ultimately, we reached a far different conclusion.

The adversary action has been tried and is now ready for decision.

## ANALYSIS

Subsection 523(a) of the Bankruptcy Code provides in part as follows:

(a) A discharge under section 727, .... of this title does not discharge an individual debtor from any debt— ....
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by —
        (A) false pretenses, a false representation, or actual fraud ....

11 U.S.C. § 523(a)(2)(A).

One of the primary purposes of bankruptcy is to provide a "fresh start" for the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Massachusetts*, 547, 1191, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007). Bankruptcy is meant to relieve a debtor from "the weight of oppressive indebtedness and permit him to start afresh". *Boston University v. Mehta (In re Mehta)*, 310 F.3d 308, 311 (3d Cir 2002).

Bankruptcy is not, however, merely an "ameliorative right" of a debtor; it also provides a remedy for creditors in certain situations. Protecting creditors can take precedence over providing a debtor with a fresh start. A debtor may not be permitted to "escape all financial obligations" in such instances by the mere expedient of filing a bankruptcy petition. *Id.*

Because of the objective of providing a debtor with a fresh start, exceptions to the discharge of a specific debt are construed "narrowly against the creditor and in favor of the debtor." *In re Pelkowski*, 990 F.2d 737, 744 (3d Cir 1993).

A creditor objecting to the discharge of a debt has the burden of proving, by a preponderance of the evidence, that one of the enumerated exceptions to discharging the debt applies. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

The fraud about which plaintiff in this case complains depends on whether plaintiff was entitled to a 5% commission for her services or to a 2.5% commission. This in turns depends on whether debtors in reality had an agent representing them as buyers. If they did, that agent was entitled to a 2.5% commission and plaintiff was entitled to a 2.5% commission. If they did not, plaintiff was entitled to the entire 5% commission.

To prevail on a theory of fraudulent misrepresentation under § 523(a)(2)(A), a creditor must establish the following: (1) debtor made a false representation; (2) debtor knew at the time that the representation was false; (3) debtor made the representation with intent to deceive the creditor; (4) the creditor justifiably relied on the representation; and (5) the creditor sustained an economic loss that was a proximate result of the

knowingly false representation. *Household Credit Services v. Ettell (In re Ettell)*, 188 F.3d 1141, 1144 (9th Cir. 1999).

Subsection 523(a)(2)(A) was enacted to protect a creditor who was tricked by a debtor into providing services. *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219-20 (4th Cir. 2007).

Requirement (1) is satisfied in this instance.

Debtors undoubtedly were aware of this commission arrangement. Plaintiff notified them of it when both debtors viewed undeveloped lots at Sienna Woods on November 7, 2001, before debtors agreed to purchase two undeveloped lots. Testimony to the contrary by debtor Alfred Lages is not credible.

Debtors voiced no objection to such a commission arrangement when plaintiff told them about it. They said nothing at all in reply. We take their silence to mean that debtors agreed to the arrangement and thus represented that they would pay plaintiff the commission for her services to which she was entitled. Silence can qualify as a representation for purposes of § 523(a)(2)(A) when one is obligated to speak but does not. An overt act is not always required. *AT&T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 404 (5th Cir. 2001).

Plaintiff believed that Helen Holland was debtors' agent because Helen Holland had accompanied debtors every time they went to Sienna Woods. Helen Holland, for instance, accompanied debtor Deborah Lages on her first visit to Sienna Woods on November 3, 2001, and accompanied both debtors when they went to Sienna Woods to view undeveloped lots on November 7, 2001. She also was present when debtors

- 11 -

executed an agreement to purchase two undeveloped lots on November 16, 2001, and signed the agreement as witness to debtors' signatures. Finally, Helen Holland attended the closing held on January 11, 2002.

Plaintiff's belief that Helen Holland was debtors' agent turned out to be incorrect. Evidence presented at trial establishes that Helen Holland was *not* debtors' agent at any time with respect to the above transaction. Helen Holland did not object at the closing when debtors crossed out the portion of the agreement of sale stating that she was acting as their agent. Had Helen Holland in reality been debtors' agent, we would expect her to have objected at the closing. Helen Holland also did not subsequently bring a lawsuit against debtors claiming to be their agent and seeking to recover a 2.5% commission. Had she been debtors' agent, Helen Holland would have been entitled to the commission.

If Helen Holland was not debtors' agent, who was? If the correct answer is that no one was, plaintiff was entitled to a 5% commission rather than a 2.5% commission.[2]

Requirements (4) and (5) also are satisfied in this case. Plaintiff justifiably relied on debtors' representation that they would pay her a 5% commission if they did not have their own agent. She also suffered a monetary loss that was proximately caused by debtors' representation when debtors did not pay her a 5% commission.

What about requirements (2) and (3)? Has plaintiff proved by a preponderance of the evidence that debtors *knew when they made the above representation* that the representation was false? Moreover, has plaintiff proved that debtors intended to deceive her *when they made the representation*?

---

[2] The falsity of debtors' representation to Helen Holland will be discussed later on in this memorandum opinion in connection with another matter.

We conclude that plaintiff has failed to establish these requirements. To the contrary, we know of no evidence offered at trial indicating that debtors had the requisite knowledge and intent. That is to say, the evidence presented at trial was *not* sufficient to establish that it is more likely than not debtors knew the representation was false when they made it and that debtors intended at that time to deceive plaintiff. Based on the evidence, it is as likely that debtor did not have the requisite knowledge and intent at that time as it is that they did.

Subsection 523(a)(2)(A) does not except from discharge just any debt resulting from a false representation or actual fraud; it excepts from discharge only those debts in which or a false representation or actual fraud was employed to **obtain** money, property or services. *In re Rountree*, 478 F.3d at 219.

The services plaintiff provided to debtors ended on December 16, 2002, or shortly thereafter, when debtors executed the agreement to purchase two undeveloped lots at Sienna Woods. Plaintiff produced no evidence establishing that she continued to render services on behalf of debtors after date.

Conduct on debtors' part indicating actual fraud on their part *after* that time does *not* fall within the scope of § 523(a)(2)(A) and does *not* warrant the conclusion that the debt they owe plaintiff is excluded from discharge by the provision. The conduct plaintiff points to in support of her claim involved conduct on debtors' part which occurred *after* she had performed the services giving rise to the debt.

This is not to say that plaintiff is incorrect in asserting that debtors defrauded her. With assistance from Fred LaSota and Ryan Homes, they unquestionably did. The

fraud they committed, however, occurred *after* plaintiff had finished rendering services to debtors and lies outside the scope of § 523(a)(2)(A). While the determination that Fred LaSota and Ryan Homes assisted debtors in defrauding plaintiff after she had finished providing services to debtors is not essential to deciding plaintiff's cause of action against debtors, we make this determination for the sake of completeness.

Evidence presented at trial establishes that debtors devised a scheme to cheat plaintiff out of the commission to which she was entitled. Moreover, that same evidence also establishes that Fred LaSota and Ryan Homes conspired with debtors and assisted them in carrying out the fraudulent scheme.

The first indication of such a scheme is found in the modified version of the commission addendum debtors sent plaintiff on December 30, 2001. In the modified version, debtors replaced the phrase "Broker Howard Hanna and Buyers Agent" with the term "Buyers Agent". This modification set the stage for debtors to claim that someone other than Helen Holland was their agent and that plaintiff was not entitled to the entire 5% commission.

The letters which Ryan Homes wrote the day before the closing were meant to provide debtors with a pretext for refusing to pay plaintiff the commission to which she was entitled.

The fact that debtors kept the letters secret until the closing indicates that debtors sought to keep plaintiff in the dark until the closing took place so they could be used as a *fait accompli*. Keeping the letters secret until the last moment supports the inference that debtors were trying to "get away with something".

The statement in the first of the letters written by Ryan Homes that it was acting as debtors' agent was *false*. Ryan Homes played no role in bringing about the agreement to purchase two undeveloped lots at Sienna Woods debtors executed on December 16, 2001. Self-serving testimony by a witness for Ryan Homes that Ryan Homes was entitled to a commission as debtors' agent lacked credibility. Ryan Homes did not enter the picture until *after* debtors executed the agreement to purchase two lots. The role it played was limited to assisting debtor in choosing the type of home to build on the lots they had purchased, in finding financing and in arranging for construction of the house.

Debtor Alfred Lages testified at trial that he contacted Fred LaSota because debtors were "concerned" about the commission addendum plaintiff sent them on December 30, 2001. Fred LaSota, debtor Alfred Lages testified, assured him that Ryan Homes was in reality debtors' agent and would write a letter stating that it was and that it waived its right to a commission.

If debtors were "concerned", they were "concerned" about finding a way to *avoid* having to pay plaintiff the commission to which they knew plaintiff was entitled. We determined previously that plaintiff informed debtors of the above commission arrangement on November 7, 2001. They clearly understood the commission arrangement and had agreed to it, albeit by remaining silent.

It was to debtors' obvious financial advantage for Ryan Homes to write the letters, as they would provide debtors with a pretext for refusing to pay plaintiff one-half of the 5% commission. Debtors' awareness of this advantage appears in an e-mail they sent to Helen Holland on January 9, 2002, two days before the closing and one day before

Ryan Homes wrote the letters. Debtors stated in the e-mail that having Ryan Homes as their agent "will be very advantageous to us financially".

Debtor Alfred Lages' testimony about the letters was contradicted by the testimony of Fred LaSota. According to Fred LaSota, debtor Alfred Lages specifically requested that Ryan Homes state in writing that it was debtors' agent and that it waived its right to a commission as their agent.

The testimony of Fred LaSota that debtor Alfred Lages requested the letters was credible. However, Fred LaSota's self-serving testimony that he did not know why debtor Alfred Lages wanted the letters and was not aware of any scheme devised by debtors to cheat plaintiff out of the entire commission was not credible.

If LaSota's testimony were credible, it would suggest that Ryan Homes was an *unwitting pawn* in a scheme devised by debtors to cheat plaintiff out of the commission to which she was entitled. We instead believe that Fred LaSota and Ryan Homes knowingly acted in concert with debtors to create a pretext for debtors' refusal to pay the commission to which plaintiff was entitled.

Fred LaSota had been with Ryan Homes for twenty-three years when he wrote the letters and at one time had been a licensed real estate agent. It defies belief that Fred LaSota did not understand what debtors were up to. To the contrary, he understood what debtors intended to do with the letters.

Fred LaSota and Ryan Homes no doubt also were aware of the terms of plaintiff's agreement with Toscana Development concerning her commission if she sold undeveloped

lots. In spite of this, they facilitated debtors' scheme to cheat plaintiff out of her commission. They conspired, in other words, with debtors.

To summarize what we have determined to this point, we find that the debt owed to plaintiff by debtors does not fall within the scope of § 523(a)(2)(A) of the Bankruptcy Code because plaintiff failed to prove all of the above requirements of § 523(a)(2)(A). Specifically, requirements (2) and (3) were not established by a preponderance of the evidence.

Acting in concert with Fred LaSota and Ryan Homes, however, debtors devised a scheme to defraud plaintiff by having LaSota and Ryan Homes write the two letters. Debtors did not, however, obtain services from plaintiff by means of their fraud. The fraud debtors perpetrated occurred *after* plaintiff had completed providing services to debtors; it was, in other words, "after-the-fact" fraud that was intended to cheat plaintiff out of her rightful commission.

One final matter remains for discussion.

Fred LaSota and Ryan Homes asserted in their motion to intervene, which was granted, that this court has jurisdiction over the claims asserted in Count III and Count IV of the amended complaint in the presently-stayed state court lawsuit. The claims, they maintain, are "related to" this adversary action, over which "this court has exclusive jurisdiction". Were we to accept this assertion, we would enter judgment in favor of plaintiff and against Fred LaSota and Ryan Homes with respect to Count III and Count IV of the amended complaint..

We disagree, however, with their assertion that these counts of the amended complaint in the state court action are "related to" this bankruptcy case. The term "related to" is a term of art in bankruptcy.

"Related to" jurisdiction exists when the outcome of a matter could conceivably have an effect on the bankruptcy estate. *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir 1984). Such jurisdiction exists if the outcome could alter a debtor's rights, liabilities, or freedom of action, whether affirmatively or negatively, and will have an effect on the handling and administration of the bankruptcy estate. *Id.*

We previously determined that the debt owed to plaintiff by debtors in the way of a commission does not fall within the purview of § 523(a)(2)(A) and consequently is dischargeable. A determination that Fred LaSota and Ryan Homes collaborated with debtors in carrying out the above scheme to cheat plaintiff out of her rightful commission will have no conceivable effect on debtors' bankruptcy estate.

The same is true of Count IV of the amended complaint. A finding that Fred LaSota and Ryan Homes tortiously interfered with debtors' contract with plaintiff will have no conceivable effect on the handling and administration of bankruptcy estate.

It is for the state court, if it chooses to do so, to hear and decide Count III and Count IV of the amended complaint as they pertain to Fred LaSota and Ryan Homes.

An appropriate order will issue.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

**FILED**

Dated: May 5, 2008

MAY 5  2008

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ALFRED G. LAGES,<br>a/k/a ALLEN LAGES and<br>DEBORAH S. MAZZIE-LAGES,<br>a/k/a DEBORAH M. LAGES,<br>a/k/a DEBORAH S. MAZZIE, | : <br>: <br>: <br>: <br>: <br>: | Bankruptcy No. 05-39122 BM |
| Debtors | : | Chapter 7 |
| HELENE MASSOF, | : <br>: | |
| Plaintiff | : <br>: | |
| v. | : <br>: | Adversary No. 06-2280 BM |
| ALFRED G. LAGES,<br>a/k/a ALLEN LAGES and<br>DEBORAH S. MAZZIE-LAGES,<br>a/k/a DEBORAH M. LAGES,<br>a/k/a DEBORAH S. MAZZIE, | : <br>: <br>: <br>: <br>: | Trial On Complaint Objecting<br>To Dischargeability Of Certain<br>Debts |
| Defendants | : <br>: | |
| and | : <br>: | |
| FREDERICK LA SOTA and<br>RYAN HOMES, INC., | : <br>: <br>: | |
| Intervenors/Third<br>Party Defendants | : <br>: | |

## ORDER OF COURT

**AND NOW,** this ___5th___ day of ___May___, 2008, in accordance with the accompanying memorandum opinion, it hereby is **ORDERED, ADJUDGED** and **DECREED** that judgment be and hereby is entered in favor of debtors Alfred Lages and Deborah

Lages and against plaintiff Helene Massof. The debt owed to plaintiff by debtors is **DISCHARGEABLE.**

    It is **SO ORDERED**.

                                                                             */s/ Bernard Markovitz 5-5-08*
                                                        **BERNARD MARKOVITZ**
                                                        U.S. Bankruptcy Judge

cm:   Debtors
       Matthew J. Lautman, Esquire
       Charles O. Zebley Jr., Esquire
       Office of United States Trustee
       Peter N. Pross, Esquire

FILED

MAY 5  2008

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA